UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:19-cv-00337-FDW

| | |
|---|---|
| ROSALINDA HERNANDEZ, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | ORDER |
| ANDREW M. SAUL, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

THIS MATTER is before the Court on Plaintiff Rosalinda Hernandez's Motion for Summary Judgment (Doc. No. 15), filed December 31, 2019, and Defendant Commissioner of Social Security Andrew M. Saul's ("Commissioner") Motion for Summary Judgment (Doc. No. 20), filed March 25, 2020. Plaintiff, through counsel, seeks judicial review of an unfavorable administrative decision on her application for Supplemental Social Security Income ("SSI").

Having reviewed and considered the written arguments, administrative record, and applicable authority, and for the reasons set forth below, Plaintiff's Motion for Summary Judgment is GRANTED; the Commissioner's Motion for Summary Judgment is DENIED; the Commissioner's decision is REVERSED; and this matter is REMANDED pursuant to Sentence Four of 42 U.S.C. § 405(g)[1] for proceedings consistent with this Order.

## I. BACKGROUND

Plaintiff filed an application for SSI alleging that she was disabled on September 9, 2015, which was denied initially and upon reconsideration. (Tr. 21). On April 6, 2016, Plaintiff filed a

---

[1] "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405.

1

written request for a hearing.  Id.  Plaintiff represented herself during the hearing held on March 15, 2016, in Charlotte, NC.  Id.  Plaintiff failed to submit written evidence five business days before the hearing and, instead, submitted it less than five days before.  Id.  However, the Administrative Law Judge ("ALJ") accepted the written evidence and additional evidence from Elizabeth Family Medicine and Monarch Mental Health, finding it met the requirements of 20 CFR 416.1435(b).  Id.

The ALJ found Plaintiff had "not engaged in substantial gainful activity since September 9, 2015." (Tr. 23).  The ALJ also found Plaintiff had the following "severe" impairments: "bipolar disorder with depression and anxiety; and morbid obesity."  Id.  Although, the "low back pain, left shoulder pain, and bilateral carpal tunnel syndrome" that Plaintiff alleged as impairments were classified as "non-severe" by the ALJ.  Id. at 24.  Then, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity" of the listed impairments codified in 20 CFR Part 404.  Id.  The ALJ found the Plaintiff had the Residual Functional Capacity ("RFC") to perform "light" work as defined in 20 CFR 416.967(b):

> Except she is limited to occasional climbing, balancing, stooping, kneeling, crouching, or crawling. She should avoid concentrated exposure to hazards. She is further limited to the performance of simple, routine, repetitive, unskilled work tasks. She would be able to concentrate on simple tasks for two-hours before takin a break, and for eight hours total during a workday. She is limited to only occasional contract with supervisors, co-workers, and the public, and must work in a low-stress, non-production work setting.

Id. at 27.  The ALJ then found Plaintiff had no past relevant work.  Id. at 27.  The vocational expert ("VE") testified that in light of Plaintiff's no prior work experience, age of 44 years old, limited education, and RFC, Plaintiff could perform the jobs of a Marker and a Garment Sorter, which are

both considered unskilled jobs and have exertional levels of "light." Id. at 31. Thus, the ALJ found Plaintiff "not disabled." Id.

Having exhausted all her administrative remedies, Plaintiff filed an appeal with this Court to review the decision of the Social Security Administration denying disability benefits. (Doc. No. 1. p, 1). Plaintiff argues the ALJ improperly assessed her obesity in the sequential evaluation process, did not define "non-production work setting" in the RFC, and did not account for Plaintiffs moderate limitations in adapting and managing oneself or concentration in the RFC. (Doc. No. 16, pp. 5, 10, & 14).

## II. STANDARD OF REVIEW

When reviewing a Social Security disability determination, a reviewing court must "uphold the determination when an [Administrative Law Judge ("ALJ")] has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." Bird v. Comm'r of Soc. Sec. Admin., 699 F.3d 337, 340 (4th Cir. 2012). Substantial evidence is that which "a reasonable mind might accept as adequate to support a conclusion." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam) (internal quotation marks omitted). It "consists of more than a mere scintilla of evidence but may be less than a preponderance." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir.2012) (internal quotation marks omitted). In reviewing the record for substantial evidence, the Court does "not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the ALJ. Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Id. (brackets, citation, and internal quotation marks omitted).

In considering an application for disability benefits, an ALJ uses a five-step sequential process to evaluate the disability claim. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Pursuant to

3

this five-step process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the severity of a listed impairment; (4) could return to his past relevant work; and (5) if not, could perform any other work in the national economy. Id.; see also Lewis v. Berryhill, 858 F.3d 858, 861 (4th Cir. 2017) (citing Mascio v. Colvin, 780 F.3d 632, 634 (4th Cir. 2015)); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). The claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five. See Lewis, 858 F.3d at 861; Monroe v. Colvin, 826 F.3d 176, 179–80 (4th Cir. 2016).

"If the claimant fails to demonstrate she has a disability that meets or medically equals a listed impairment at step three, the ALJ must assess the claimant's residual functional capacity ("RFC") before proceeding to step four." Lewis, 858 F.3d at 861. Here, the ALJ considers the claimant's residual functional capacity ("RFC") to determine what is "the most" the claimant "can still do despite" physical and mental limitations that affect her ability to work. Id. § 416.945(a)(1); § 404.1520(a)(4)(iv).

> In making this assessment, the ALJ must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations. Only after such a function-by-function analysis may an ALJ express RFC in terms of the exertional levels of work.

Monroe, 826 F.3d at 179 (citations and quotations omitted). Once the function-by-function analysis is complete, an ALJ may define the claimant's RFC "in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-8p, 1996 WL 374184, at *1. See generally 20 C.F.R. §§ 404.1567, 416.967 (defining "sedentary, light, medium, heavy, and very heavy" exertional requirements of work).

> When assessing the claimant's RFC, the ALJ must examine "all of [the claimant's] medically determinable impairments of which [the ALJ is] aware," 20 C.F.R. §§

4

> 404.1525(a)(2), 416.925(a)(2), "including those not labeled severe at step two." Mascio, 780 F.3d at 635. In addition, he must "consider all [the claimant's] symptoms, including pain, and the extent to which [her] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," 20 C.F.R. §§ 404.1529(a), 416.929(a). "When the medical signs or laboratory findings show that [the claimant has] a medically determinable impairment(s) that could reasonably be expected to produce [her] symptoms, such as pain, [the ALJ] must then evaluate the intensity and persistence of [the claimant's] symptoms so that [the ALJ] can determine how [her] symptoms limit [her] capacity for work." 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1).
> After assessing the claimant's RFC, the ALJ continues with the fourth step, where the claimant must establish she is unable to perform past work. Mascio, 780 F.3d at 635.

Lewis, 858 F.3d at 862. If the claimant meets her burden as to past work at step four, the ALJ proceeds to step five.

> "At step five, the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that 'exists in significant numbers in the national economy,' considering the claimant's residual functional capacity, age, education, and work experience." [Mascio, 780 F.3d at 635 (quoting 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c)(2), 416.1429)]. "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations." Id.

Lewis, 858 F.3d at 862 (citations and quotations omitted). If the Commissioner meets this burden in step five, the claimant is deemed not disabled, and the benefits application is denied. Id.

### III. ANALYSIS

**A. ALJ's Evaluation of Plaintiff's Obesity**

Plaintiff first argues the ALJ's assessment of her obesity did not adhere to the requirements of SSR 02-p1.[2] (Doc. No. 16, pp. 5-6). The regulation makes explicit that obesity is not itself a listing, but an individual suffering from obesity can meet the requirements for a listing if another independent impairment or impairment in combination with obesity, meets the requirements for a

---

[2] SSR 02-1p was rescinded and replaced with SSR 19-2p, effective May 20, 2019. However, SSR 02-1p is relevant to the Court's analysis because it was in effect at the time of Plaintiff's hearing in 2016.

5

listing. See Social Security Ruling ("SSR") 02-1p, 2002 WL 34686281, at *5 (S.S.A. 2002) (stating mental disorders, for example, can worsen the effects of obesity); see also Griffey v. Berryhill, No. 1:16-CV-00257, 2017 WL 1954536, at *4 (W.D.N.C. May, 10 2017) ("[A]n ALJ *may* make a determination that obesity, by itself or in conjunction with other impairments, meets or exceeds a listing.") (emphasis in original). At Step Three, Plaintiff carries the burden of proof to show a listing is either met or exceeded. McGowan v. Comm'r, Soc. Sec. Admin., No. ADC-17-3343, 2018 WL 5927033, at *8 (D. Md. Nov. 13, 2018). Further, the regulation states the agency "will not make assumptions about the severity or functional effects of obesity combined with other impairments" and that each case will be evaluated based on the record. Id. at *6. See Livingston v. Colvin, No. 3:13-CV-00233, 2014 WL 496484, at *7 (W.D.N.C. Feb. 6, 2014) (stating an ALJ makes "individualized assessments" about how the plaintiff's obesity, either alone or in connection with other impairments, affects workplace performance).

Plaintiff argues the ALJ erred in failing to consider her "severe" obesity and "non-severe" musculoskeletal impairments in the RFC analysis. An ALJ must consider all impairments in determining a claimant's RFC, even those that are not severe. 20 C.F.R. § 404.1545 (2012). See McGowan, 2018 WL 5927033, at *3 ("The ALJ must consider even those impairments that are not 'severe.'"); see also Allen v. Comm'r of Soc. Sec., No. 2:09-CV-265, 2010 WL 1142031, at *14-15 (E.D. Va. Feb. 24, 2010) (remanding because the ALJ failed to consider plaintiff's non-severe impairments in his RFC analysis). Also, an ALJ should assess "the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment," while keeping in mind that other impairments in combination with obesity may cause increased limitations. SSR 02-1p at *5.

The ALJ must determine a claimant's RFC by first identifying "functional limitations or restrictions" and then assessing the claimants "work-related abilities on a function-by-function basis." See Hawkins v. Saul, 796 F. App'x 159, 163 (4th Cir. 2019) (understanding there is no per se rule requiring remand for an ALJ not performing "an explicit function-by-function analysis," but remand may be permissible when inadequacies in analysis "frustrate meaningful review"). "In other words, the ALJ must *both* identify evidence that supports his conclusion *and* build an accurate and logical bridge from [the] evidence to his conclusion." Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018) (internal quotations omitted).

Here, in determining Plaintiff's RFC, the ALJ considered the severe mental impairments but did not consider the musculoskeletal impairments that were classified as "non-severe" in Step Two in combination with obesity as required by SSR 02-p1. (Tr. 27-30). The only mention of Plaintiff's "severe" obesity in the RFC analysis is limited to a mention of her BMI and a sentence stating the RFC of "'light' is secondary to her morbid obesity" without any further explanation. Id. at 30. The ALJ mentions Plaintiff's low back pain, left-sided pain, and carpal tunnel issues, but fails to assess them in conjunction with the "severe" obesity Plaintiff suffers from. Id. at 27. Without consideration of Plaintiff's obesity and her non-severe impairments in conjunction with her obesity, the ALJ failed to both apply the correct legal standard and paint a logical bridge from the evidence to the conclusion he reached regarding Plaintiff's RFC. Therefore, without any analysis of Plaintiff's obesity and her non-severe impairments, meaningful review by the Court is frustrated and the case should be remanded.

### B. RFC Analysis and Plaintiffs Mental Impairments

Plaintiff argues the ALJ failed to define "non-production work setting;" did not account for her moderate limitations in concentration, persistence, or pace; and did not account for moderate

limitations in adapting and managing herself. Again, "the ALJ must *both* identify evidence that supports his conclusion *and* build an accurate and logical bridge from [the] evidence to his conclusion." Woods, 888 F.3d at 694 (internal quotations omitted). Because there is no existing regulatory definition of "non-production work setting" and similar terms, an ALJ's explanation is of utmost importance to build a logical bridge from evidence to his conclusion. See Perry v. Berryhill, 765 F. App'x 869, 871-72 (4th Cir. 2019) (remanding because an ALJ failed to offer any explanation of her usage of the term "non-production oriented work setting" in a claimant's RFC).

Recently, the Fourth Circuit made explicit that it "did not impose a categorical rule that requires an ALJ to always include moderate limitations in concentration, persistence, or pace as a specific limitation in the RFC." Shinaberry v. Saul, 952 F.3d 113, 121 (4th Cir. 2020). Although, the court also made clear that an ALJ must still *explain* the relevant medical evidence in relation to the limitations that were imposed in the RFC. Compare id. (affirming an ALJ's decision because "the ALJ discussed in detail the psychological evaluations . . . [and] Shinaberry's adult functional report, and sufficiently explained why the mental limitation to simple, routine, and repetitive tasks accounted for Shinaberry's . . . moderate limitations in her concentration, persistence, and pace.") with Mascio, 780 F.3d at 637 (4th Cir. 2015) (remanding an ALJ's decision because he failed to give any explanation regarding the claimant's ability to perform relevant functions).

Here, the ALJ does not assess how Plaintiff's medical history lead him to place the limitation "non-production work setting" in her RFC. The ALJ also failed to explain how her moderate limitations in concentration, persistence, and pace or moderate limitation in adapting and managing herself is reflected in her RFC. The ALJ begins by explicitly acknowledging he must determine whether an impairment can "reasonably be expected to produce . . . pain or other

symptoms" and then evaluate how those symptoms could affect the Plaintiff's functional limitations. (Tr. 27). Then, the ALJ provides in-depth analysis of Plaintiff's mental impairment history beginning in December 2013 to March 2018 but does not provide any explanation whatsoever regarding how this medical history shaped his suggested RFC. Id. at 27-29. Instead, the ALJ only provides boilerplate language indicating that Plaintiff's impairments are severe, but do not affect her ability to meet "basic demands of regular work on a sustained basis" and that severe impairments have been accounted for in the RFC. Id. at 30. By doing so, the ALJ fails to tie together medical evidence into a meaningful analysis that would allow the Court to understand the conclusion reached in Plaintiff's RFC. Thus, without any explanation, the Court cannot partake in any meaningful review of the ALJ's usage of the term "non-production work setting" and any purported limitations imposed regarding Plaintiff's moderate limitations in concentration, pace, or persistence. This matter must be remanded.

The Court explicitly notes that in ordering remand pursuant to sentence four of 42 U.S.C. § 405(g), the Court does not take a position on the merits of Plaintiff's application for disability benefits nor does the Court express any opinion as to Plaintiff's other assignments of error. The Court finds the ALJ's decision deficient for the reasons stated herein, and consequently, that decision as written cannot stand. See, e.g., Newton v. Apfel, 209 F.3d 448, 455 (5th Cir. 2000) ("The ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision[.]" (citations omitted)). In declining to address the other assignments of error in dicta,[3] the Court notes that

---

[3] The Court recognizes the Fourth Circuit, on occasion, will address additional assignments of error notwithstanding an order to remand. See Patterson v. Comm'r of Soc. Sec. Admin., 846 F.3d 656, 663 (4th Cir. 2017) (noting "[n]ormally, our opinion would end here, and we would not go beyond ordering the ALJ to apply the regulation that it failed to observe" but then summarily directing the ALJ to provide a more detailed explanation as to other errors "in the interest of judicial efficiency"); Bird, 699 F.3d at 343 (citing Sharpe v. Dir., Office of Workers' Comp. Programs, 495 F.3d 125, 134 n. 16 (4th Cir. 2007) (providing instructions for ALJ to follow on remand regarding issues not dispositive on appeal); Gordon v. Schweiker, 725 F.2d 231, 236 (4th Cir. 1984) ("Since the case must be reconsidered by the Secretary, we do provide some guidance as to a matter very likely to arise at the hearing which will occur.")).

9

remand here provides the opportunity for the ALJ to modify any prior basis for the prior decision in the new decision issued upon remand. "Under § 405(g), 'each final decision of the Secretary [is] reviewable by a *separate* piece of litigation,' and a sentence-four remand order '*terminate[s]* the civil action' seeking judicial review of the Secretary's final decision." Shalala v. Schaefer, 509 U.S. 292, 299 (1993) (alteration in original) (quoting Sullivan v. Finkelstein, 496 U.S. 617, 624-25 (1990)).

## IV. CONCLUSION

For these reasons, Plaintiff's Motion for Summary Judgment (Doc. No. 15) is GRANTED; the Commissioner's Motion for Summary Judgment (Doc. No. 20) is DENIED; and this matter is REMANDED to the Commissioner for further proceedings consistent with this order.

IT IS SO ORDERED.

Signed: June 15, 2020

Frank D. Whitney
United States District Judge